IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No.   3:20-cr-00161-2 |
| v. | ) |
| | ) Judge Trauger |
| | ) |
| SHELBY LIGONS | ) |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the Acting United States Attorney for the Middle District of Tennessee, respectfully files this memorandum to aid the Court in its sentencing determination. In this memorandum, the government provides the factual and procedural background underlying this case, as well as a discussion of the sentencing factors set forth at 18 U.S.C. § 3553(e). The government has set forth its sentencing recommendation in a document that will be filed contemporaneously with the filing of this memorandum.[1]

### I.   Factual and Procedural Background

On the afternoon of May 30, 2020, protesters gathered in downtown Nashville following the death of George Floyd in Minneapolis, Minnesota. After approximately two hours of demonstrations, protest participants, including the defendant, Shelby LIGONS, began marching through various locations in downtown Nashville, passing by the Central Precinct for the Metropolitan Nashville Police Department ("MNPD"), the Nashville Convention Center, and Lower Broadway.

---

[1] The government may, after consultations with defense counsel, seek to unseal that filing at or before the time of the sentencing hearing in this case.

In the evening on May 30, 2020, a number of persons, including LIGONS, gathered in front of Nashville City Hall, also known as the Metro Courthouse or the historic courthouse, which is located at 1 Public Square, Nashville, Tennessee 37201, in the Middle District of Tennessee. City Hall is real property used in interstate and foreign commerce. At that time, persons using various tools, including crowbars and other objects, began smashing the windows of City Hall and spraying graffiti on the City Hall façade. One or more fires were also set inside City Hall at this time.

Numerous video clips and photographs of the destruction at City Hall were posted on social media websites, on the websites for news outlets, and on other Internet sites. The Federal Bureau of Investigation ("FBI") developed LIGONS as a target for federal prosecution, based principally on evidence developed from these video clips and photographs. These videos and photographs capture distinctive tattoos that LIGONS bears on various parts of her body. These videos and photographs also depict LIGONS attempting to set City Hall on fire. Specifically, LIGONS set fire to a poster with the words "Fuck the Police" on it and placed it inside a window located on the exterior structure of City Hall. During a custodial interview with FBI agents, after waiving her *Miranda* rights, LIGONS admitted that she was present when City Hall was set on fire, that she lit a sign on fire, and that she placed the lighted sign inside a window of City Hall, as depicted in the video screen captures and photos below:






The government charged LIGONS by complaint with a violation of 18 U.S.C. § 844(i) on August 3, 2020. (Doc. 3.) LIGONS was indicted on October 14, 2020. (Doc. 22.) LIGONS entered into a plea agreement on March 3, 2021. (Doc. 50.) LIGONS, who incurred a pretrial release violation prior to entry of her guilty plea, surrendered to custody at the time of her guilty plea.

## II. Sentencing Guidelines Range

The Presentence Investigation Report (PSR) calculates LIGONS's final offense level as 21 and her Criminal History Category as I. Absent a statutory mandatory minimum, LIGONS's

guidelines range would be 37 to 46 months of imprisonment. The offense of conviction in this case carries a statutory mandatory minimum term of imprisonment of five years, however. LIGONS's guidelines range is therefore 60 months. U.S.S.G. § 5G1.1(b).

The government has no objections to the guidelines calculations set forth in the July 9, 2021 Presentence Report. The government notes that, under the plea agreement, the parties agreed to recommend to the Court a base offense level of 20, pursuant to U.S.S.G. § 2K1.4(a)(2), and a final offense level of 17. (Plea Agreement at 6-7.) The plea agreement also provides, however, that, "[i]n the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended" in the plea agreement, "the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same." (*Id.* at 7.) Based upon further review of the facts underlying LIGONS's conviction and the applicable guidelines, the government has no objection to the determination by the Probation Office that LIGONS's base offense level is 24, pursuant to U.S.S.G. § 2K1.4(a)(1), and that her final offense level (before application of the mandatory minimum) is therefore 21, not 17.

### III.     18 U.S.C. § 3553(a) Factors

In determining the appropriate sentence, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), including, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law, the need to deter the defendant from committing new crimes, the need to deter others from committing crime, the need to protect the public from further crimes of the defendant, the need to provide the defendant with correctional treatment, and the overriding need to provide a just punishment in this case.

Here, the offense to which LIGONS has pled guilty is undoubtedly serious. Protesters exercising their First Amendment rights gathered at a rally on May 30, 2020, to peacefully protest

Floyd's murder in Minneapolis and to bring attention to broader concerns regarding instances of police brutality. Tragically, that protest was marred by acts of vandalism, mayhem, and violence, culminating in the attempt by persons in the crowd to burn down City Hall. LIGONS participated in that violence in a dramatic way, lighting on fire a sign reading "Fuck the Police" and adding it to the conflagration while the crowd cheered her on.

Furthermore, while LIGONS does not have an extensive criminal history, she also does not come before this Court with an unblemished criminal record. As reflected in the presentence report, LIGONS was arrested for driving under the influence and possession of a controlled substance on January 1, 2020, after she was stopped for speeding. (PSR ¶ 29.) LIGONS failed a field sobriety test, and officers recovered a small amount of marijuana from her car. (*Id.*) That case was pending when LIGONS committed the offense in the instant case.

LIGONS also appears to have engaged in potentially criminal conduct while on pretrial release in this case. According to the PSR, LIGONS arranged for her boyfriend to meet with a person in Nashville on January 2, 2021 "under the 'ruse' of making a drug deal." (PSR ¶ 31.) LIGONS appears to have known that her boyfriend intended to confront this person because the person had robbed LIGONS's boyfriend on a prior occasion. When LIGONS and her boyfriend met with this other person in Nashville, a physical altercation ensued, during which LIGONS's boyfriend was shot and killed.

Initially, LIGONS was less than fully candid with MNPD officers tasked with investigating the circumstances of LIGONS's boyfriend's murder. As reflected in a Petition for Action on Conditions of Pretrial Release, *see* Doc. 45, she was also less than fully candid with pretrial services about this incident. (The government notes that, rather than contest the allegations in the petition, LIGONS agreed to go into custody at the time of her plea agreement, *see* Doc. 48.) It is

5

Case 3:20-cr-00161   Document 69   Filed 07/12/21   Page 5 of 8 PageID #: 279

the government's understanding that LIGONS is now cooperating with the MNPD investigation into this homicide. But any sentence imposed in this case should reflect LIGONS's prior criminal contact and her violation on pretrial release.

There is also a significant need in this case for a sentence that will serve as a general deterrent to the public. The government is mindful of the wave of protests that swept the United States last summer in connection with Floyd's untimely death. Many, if not most, of those protests were peaceful expressions protected under the First Amendment. But events like the attempted arson at City Hall cheapened those protests, drawing attention away from the message of police reform and towards the violent conduct of a subset of protestors. Those in the community who would seek to engage in violent conduct like this must know that they will potentially face criminal charges and incarceration as a result of that conduct.

Lastly, the government represents to the Court that undersigned counsel consulted with Metro Legal in advance of this filing, to determine whether a representative of the City of Nashville wished to make a victim impact statement or seek restitution in connection with this offense. Metro Legal declined to make a victim impact statement or to seek the imposition of a restitution amount on LIGONS. The United States likewise declines to seek the imposition of a restitution amount on LIGONS in this case, although the United States suggests that it may be appropriate for the Court to impose a nominal restitution amount on LIGONS here as a component of her punishment for commission of the offense. But undersigned counsel obtained from Metro Legal an estimate of the cost of repairs to City Hall related to the fire/water damage caused on May 3, 2020. According to that estimate, the cost of repairs due to fire/water damage alone will be approximately $610,094.81. That cost will be borne, of course, by taxpayers in Davidson County.

## IV. Conclusion

For the reasons above, as well as for the reasons set forth in the government's related filing, the government respectfully requests that the Court sentence LIGONS to the term of imprisonment outlined in that filing. Such a sentence would be appropriate in this case under the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

MARY JANE STEWART
Acting United States Attorney


By: */s/ Ben Schrader*
BEN SCHRADER
Assistant United States Attorney
Middle District of Tennessee

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 12, 2021, I emailed a copy of the instant filing to Jodie Bell, Esq., counsel for the defendant.

                                        By:    */s/ Ben Schrader*
                                                        BEN SCHRADER
                                                        Assistant United States Attorney

8

Case 3:20-cr-00161   Document 69   Filed 07/12/21   Page 8 of 8 PageID #: 282