```
                IN THE UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF TENNESSEE
                        NASHVILLE DIVISION

    UNITED STATES OF AMERICA,    )
                                 )
                Plaintiff,       )
                                 ) Case No. 3:20-cr-00161-2
         v.                      )
                                 ) JUDGE TRAUGER
    SHELBY LIGONS,               )
                                 )
                Defendant.       )
                                 )
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                       EXCERPT OF PROCEEDINGS

                        SENTENCING HEARING
                           (Continued)
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    BEFORE:                   ALETA A. TRAUGER
                               DISTRICT JUDGE

    DATE:                     August 10, 2021

    TIME:                     3:06 p.m.
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    APPEARANCES:

    FOR THE GOVERNMENT:       Mr. J. Benjamin Schrader
                              Nashville, Tennessee

    FOR THE DEFENDANT:        Ms. Jodie A. Bell
                              Nashville, Tennessee




    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    LISE S. MATTHEWS, RMR, CRR, CCP
    Official Court Reporter
    837-A U.S. Courthouse
    Nashville, TN 37203
    lise_matthews@tnmd.uscourts.gov
```

I N D E X

Tuesday, August 10, 2021

INDEX OF WITNESSES

(NONE)

EXHIBITS

| PLAINTIFF'S EXHIBIT | MARKED FOR I.D. | RECEIVED IN EVD. | WITH-DRAWN |
|---|---|---|---|
| (NONE) | | | |

| DEFENDANT'S EXHIBIT | MARKED FOR I.D. | RECEIVED IN EVD. | WITH-DRAWN |
|---|---|---|---|
| 1   Thumb drive of video of the protest | 6 | 6 | |

1    The above-styled cause came on to be heard on
2 August 10, 2021, before the Honorable Aleta A. Trauger,
3 District Judge, when the following proceedings were had,
4 to-wit:
5    THE COURT: Good afternoon. We're here on the
6 final hearing concerning sentencing in United States versus
7 Shelby Ligons. We have Ben Schrader for the Government and
8 Jodie Bell for Ms. Ligons. Ms. Ligons is in the courtroom.
9    I want to thank both counsel for all your
10 diligence in getting me all this material about other people
11 who have been prosecuted federally and locally for the
12 various demonstrations that took place last spring here and
13 around the country. They were very -- it was very helpful to
14 me.
15    So I'll hear any further argument that the
16 Government wishes to make as to sentencing. I believe the
17 Government is requesting a 45-month sentence. Is that still
18 your position?
19    MR. SCHRADER: Yes, Your Honor. And I guess I
20 just want to make a couple of observations. It was helpful
21 to me, too, to get a sense of how these cases were prosecuted
22 around the country and what sort of sentences Courts were
23 imposing.
24    The Government's view is that our recommendation
25 is essentially consistent with many of the sentences that

have been imposed in cases like this around the country. I think there are certainly some migrating factors in Ms. Ligons's case, and defense counsel has identified those, but unlike some of these cases there was not significant planning ahead of time. It was a decision that I think Ms. Ligons made at the time. And regrets. But it's also very serious conduct. And there's a reason that she's facing federal charges now, because it is a serious crime.

Just in the cases that I've identified here, pages 5 and 6 of the Government's filing, there are a couple of sentences that are in the, say, 24-month range. One of those is the Kelsey Jackson case. In that case it appears -- I don't really have many facts for that case. I couldn't seem to find many. But it appears that that defendant set fire to a police car and also appears to have cooperated with the Government's investigation. And then I notice a number of sentences sort of in the 36 to 48 and a little bit higher range, including a set of cases -- next involving the Minnesota Third Precinct attack, really, involving Molotov cocktails.

One thing that stuck out to me about that case is the amount of restitution apportioned among the defendants. We're not seeking restitution in this case. But that does appear to be a mechanism that some Courts have used to hold defendants accountable. So some defendants in that case --

1  one defendant, for example, was sentenced to 27 months, but
2  also faces joint and several liability of $12 million in
3  restitution.  So, again, we're not seeking that.  We think
4  that the sentence we recommended is appropriate.  I haven't
5  found any sentences that any federal courts have imposed in
6  cases like this that approach the essentially five or
7  six-month sentence that Ms. Ligons is requesting here.  So we
8  stand by our original recommendation, Your Honor, and ask for
9  a sentence of 45 months.
10             THE COURT:  All right.  Thank you.
11             Ms. Bell.
12             MS. BELL:  Good afternoon, Your Honor.  Two things
13 just at the outset.  I did not enter into evidence the video.
14 I didn't know if Your Honor wanted that and if I should
15 make -- I would like to make that part of the record.
16 That --
17             THE COURT:  That's fine.
18             MS. BELL:  -- was an oversight on my part.  So if
19 I could just hand it up --
20             THE COURT:  That's fine.  It was played during the
21 sentencing.
22             MS. BELL:  Yes, ma'am.
23             THE COURT:  And so we'll mark it -- I don't think
24 we have any other exhibits, do we?
25             MS. BELL:  No, ma'am.

1          COURTROOM DEPUTY: No.
2          THE COURT: All right. So it will be Exhibit 1.
3          MS. BELL: Yes, ma'am.
4          (Whereupon Defendant's Exhibit 1 was received in
5 evidence.)
6          MS. BELL: And then I did want to update the Court
7 on one matter that I realized this afternoon as I was
8 speaking with Ms. Ligons in the back.
9          On page 10 of Ms. Ligons's document, we reference
10 a case out of Utah where there were multiple defendants. And
11 one of them was actually sentenced on August 2nd. So I did
12 look up that sentence. And her name is Lateesha Richards.
13 That's out of the District of Utah, Case 2:20-cr-00182.
14 There the Court imposed a 20-month sentence, three years
15 supervised release, $2,500 restitution. And that involved a
16 burned and completely destroyed police car. Her judgment is
17 at Docket Entry 277. And in Docket Number 274, her
18 sentencing memo, her lawyer outlines that she also threw a
19 bat in addition to throwing something on the burning police
20 car. So I thought that that -- that was important for the
21 Court to know that that person was sentenced to the
22 20-months.
23          I respectfully disagree with the Government with
24 regard to the sentence requested in this case. I would again
25 remind the Court -- and I know Your Honor hasn't forgotten

1 about the Ryan Ray case out of Davidson County, out of this
2 community, where Mr. Ray was sentenced to ten years on
3 Community Corrections. Although I do think he did serve a
4 period of incarceration prior to his sentencing.
5     I would say that of the cases cited by the
6 Government and the cases that I found, the ones that are most
7 in line with Ms. Ligons's are the Kelsey Jackson case. There
8 is another one, Bryce Williams, that involves that burning of
9 the police station. And I should note that the police
10 station was essentially destroyed in that particular case.
11     Also, in that case out of Minneapolis involving
12 the police station, the police had built some sort of -- it
13 sounded like from the sentencing documents -- a fence or a
14 barrier around the police station that the rioters broke
15 through. Once they broke through that barrier, they then lit
16 the police station on fire and causing significant damage to
17 it. And I believe with respect to everyone charged in that
18 case, Molotov cocktails were involved, which would indicate
19 some degree of planning, some degree of thought. You have to
20 put that thing together. It's got an accelerant involved in
21 it. It's much more dangerous conduct, I would submit to Your
22 Honor, than Ms. Ligons's conduct. There was another case
23 that we cited that's close to -- it's Killian Melecio, and he
24 had --
25     THE COURT: What page is that on?

1     MS. BELL:  Let me tell you, Your Honor.
2     This young man -- while I find the page -- he had
3  put a burning piece of cloth in the tank of a police car.
4  That is on page 12.  He got 28 months imprisonment for
5  stuffing a shirt into the gas tank of a police vehicle.
6  Again, then lighting that on fire; potentially causing an
7  explosion.  So I would submit that that is more egregious
8  conduct than Ms. Ligons's.
9     Moreover, I don't know the intricacies of each
10 person's sentencing memo, but in this particular case, as
11 Your Honor knows, we put on significant -- or submitted to
12 the Court significant information about her serious mental
13 health issues, coupled with her cooperation, her work
14 history, and some of the positive things she has done.
15    So I would respectfully submit to Your Honor that
16 the requested sentence -- at this time she's served almost
17 six -- six months in jail.
18    THE COURT:  I think closer to five.
19    MS. BELL:  Well, she had a week before, as well,
20 when she was initially arrested.
21    THE COURT:  Yeah --
22    MS. BELL:  So she's --
23    THE COURT:  -- three days, I think.
24    MS. BELL:  She's nearing -- well, okay.  She's
25 nearing getting there, with good time credit and everything,

about six months. And that -- we would submit that conditions of her release can be put into place, including the Next Door program, which would allow her to start immediately intensive outpatient therapy, which is something she very much needs, community service; an element of restitution would be appropriate to remind her of the seriousness of her conduct. And we would submit that in light of the cases in front of you, charged both in state and in federal court, that the proposed sentence is sufficient but no greater than necessary to further the objectives of this Court.

THE COURT: Thank you.

All right. The Court's obligation is to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of the sentencing statute, taking into account the nature and circumstances of the offense and the history and characteristics of the Defendant.

There are lots of family and friends here. And I want to make sure that you understand what the purposes of sentencing is in the federal system. It's probably different from what it is in several state systems.

In the federal system the sentence is to reflect the seriousness of the offense, to promote respect for the law, to be a just punishment for the offense, to protect the public from further crimes of the Defendant, to provide the

Defendant with needed educational or vocational training, drug treatment, medical care, in the most effective manner, and to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. And that is what this second phase of the sentencing was focused on. Because as we got toward the end of the first lengthy hearing on July 19th, I became quite concerned that the Government was requesting what looked like a disproportionately heavy sentence for this defendant's conduct. And that's why I requested both lawyers to give me additional information about other people who have been prosecuted for the event in Nashville on May 30th of last year, when we had our protests, and also federally, and to the extent they had access to state records in other states, other prosecutions related to the demonstrations across the country in connection with the Floyd murder. And so that information I found very helpful, and I was very grateful for the lawyers who did a lot of digging to get that information to me.

So in looking at the nature and circumstances of the offense, Ms. Ligons has pled guilty to malicious destruction of property using fire or explosives -- here it was fire -- on May 30th. She gathered with friends to participate in the demonstration. She never participated in a demonstration before. They gathered, they made posters,

and they came downtown. They were dispersed by some kind of spray or -- or gas or something. Anyway, she lost track of her friends. She was separated from them. And she was close to the Metro courthouse. Someone suggested that she set fire to her poster and put it into an already broken window, where a fire was already ignited, and she foolishly did. That's what she did. She didn't construct Molotov cocktails. She didn't conspire with her friends to burn up police cars or break into businesses and loot them. That's what she did.

For the Government to be seeking 45 months when she cooperated, in addition to participated in such a minimal way in this demonstration and destruction of -- that happened at the Metro courthouse to me is unfathomable, to be honest. Unfathomable. And the research that you all have given me on what's happened to other people reinforces my view, that 45 months is an outrageous request from the Government.

In terms of Ms. Ligons's background, she is now 23. She was 22 when this happened. She has an Associate's Degree. She has always done very well in school. She's smart. I can tell that by her allocution. She is in Criminal History Category I. She has, I believe, a DUI, is all she has. She has serious mental health issues. Her parents divorced when she was young. Her -- there was abuse in the family. She has a child who is now five. She was with the father of this child for a number of years, and he

was unfortunately murdered when the baby was six months old. So she is a single mom. She is -- has been in treatment for these serious health issues -- mental health issues, including suicide attempts, PTSD, depression.

She has held lots of jobs, not up to the standard of what she should be doing, in the Court's view, given her intellect and her education. I think she can do a whole lot better than the kinds of jobs she's been holding. She started using drugs at a very young age, marijuana daily, starting at about age 11.

She cooperated right away with the Government. She allowed them to search her phone where they found valuable videos of her codefendant, Mr. Somers. She identified him in a proffer as the principle instigator of the fire at the courthouse. Her cooperation was disclosed to Mr. Somers. The Government won't say whether they think that helped make him plead. I can't imagine it didn't help, the fact that Mr. Somers is pleading open to this indictment. So that was valuable cooperation given to the Government.

Given her substantial assistance, her very young age at the time this happened, her mental health issues, there is an evaluation by Pam Auble, Dr. Pam Auble, about how easily influenced Ms. Ligons is -- I hope that this experience will teach her that she can't be easily influenced by other people doing bad things. Her child is about to

start school.  She has consistently held jobs to try to support herself.  And looking at all of the other prosecutions and penalties for the activities that took place last spring, taking into account the testimony of her friend, who gave valuable testimony about how this -- this group assembled and made posters and went downtown to demonstrate, and not destroy things, and the testimony from her mother, which the Court also found valuable, and her father, taking into account all of this information, I can't give her time served, but I'm going to give her a year and a day, which means she will serve just a few more months.

I believe that this sentence will comply with all the purposes of the sentencing statute.  It will reflect the seriousness of the offense, promote respect for the law, be a just punishment, protect the public from further crimes, which I do not expect from this Defendant, hopefully give her a little bit of treatment while she is incarcerated.  And the Court does not believe it will create unwarranted sentencing disparities for defendants who have engaged in similar conduct.

I am going to order $500 in restitution to be paid.  And that will be joint and several with any restitution that is ordered against her codefendant.  After all, over $600,000 of damage was done to the courthouse.  And she is responsible for a little bit of that.  The custody

1  sentence will be followed by three years of supervised
2  release.  I don't levy a fine because I find she's
3  financially unable to pay a fine.  She must pay the $100
4  special assessment.
5              The special conditions of her supervised release
6  are drug testing and substance abuse treatment, mental health
7  treatment, not use or possess controlled substances without a
8  valid prescription, and advise the probation office of any
9  physician who prescribes controlled substances.  I suspect
10 you will be prescribed controlled substances for mental
11 health treatment, and so you'll have to make sure the
12 probation office is aware of those valid prescriptions.  And
13 you are to take all mental health medications prescribed by
14 your treating physician, and furnish all financial records
15 and tax returns.
16             Ms. Ligons, to the extent you retained your right
17 to appeal, any appeal must be filed within 14 days.  You may
18 apply to appeal under the Pauper's Oath and the Clerk will
19 file your Notice of Appeal if you request the Clerk to do so.
20             You should receive credit for the few days you
21 served in August of 2020 and for the time you have served
22 since March 3rd of this year when you surrendered after your
23 plea.  I will make recommendations.  There's not much time to
24 get them done, but I'll be glad to recommend mental health
25 treatment and substance abuse treatment if you would like me

to.

MS. BELL: While you're in prison.

Yes. Yes, please, Your Honor.

THE COURT: And would you still like me to recommend Alderson?

MS. BELL: Yes, Your Honor, I think that would -- one second -- she said, Your Honor, since it won't be as long as we anticipated, if we could just make a recommendation that she be housed as close as -- as close to Nashville as possible.

THE COURT: All right. We'll make that recommendation.

MS. BELL: Thank you.

THE COURT: Okay.

All right. I'm not granting any formal downward departures. This is all variance.

Does the Government object to my variance?

MR. SCHRADER: I think for purposes of today's proceeding we will, Your Honor. I don't know what we'll do with that, but for the record, yes.

THE COURT: Okay. Are there any objections from the Defendant, not previously raised?

MS. BELL: No, Your Honor.

THE COURT: Ms. Ligons, I think this has been a very hard lesson for you to learn, but I know you've learned

1  from it.  I hope you have.  I want to thank your family and
2  friends for supporting you.  And I know they'll continue to
3  support you.  And I hope you can get out and get a good job.
4  Get yourself a good job.  It's a good employment environment
5  out there right now.  Everybody needs smart people.  And we
6  have all these companies moving into Nashville.  And I think
7  you'll have a lot of opportunities.  And a lot of them hire
8  people who have a felony conviction, believe it or not.  They
9  really do.  And I know probation will help you get such a
10 job.  I wish you good luck.
11             (Court adjourned.)
12             (Proceedings concluded at 3:31 p.m.)

REPORTER'S CERTIFICATE

     I, Lise S. Matthews, Official Court Reporter for the United States District Court for the Middle District of Tennessee, with offices at Nashville, do hereby certify:

     That I reported on the Stenograph machine the proceedings held in open court on August 10, 2021, in the matter of UNITED STATES OF AMERICA v. SHELBY LIGONS, Case No. 3:20-cr-00161-2; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript (pages 1 through 15) is a true and accurate record of said proceedings.

     This the 13th day of September, 2021.

/s/ Lise S. Matthews
LISE S. MATTHEWS, RMR, CRR, CRC
Official Court Reporter